IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : CRIMINAL ACTION |
| | : NO. 20-274-1 |
| JOHN ALLEN KANE | : |

**MEMORANDUM**

SURRICK, J.                                                                                         AUGUST 4, 2021

Presently before the Court is Defendant John Allen Kane's Motion to Suppress Physical Evidence. (ECF No. 16.) A suppression hearing was held on June 14, 2021 and July 29, 2021. For the following reasons, Defendant's Motion will be Denied.

I.   **FINDINGS OF FACT**

At 7:30 p.m. on January 17, 2018, Philadelphia Police Officers Steven Farley and Ronald Burgess were on routine patrol in the 19th District. (June 14, 2021 Hr'g Tr. at 11-12, ECF No. 24.) The 19th District is considered to be a high-crime area. (*Id.* at 8.) The two uniformed officers, who are assigned to a tactical unit of the department, were traveling northbound on 55th Street. (*Id.* at 12.) As they approached Vine Street in their marked patrol vehicle, they observed a red Chevrolet Traverse sport utility vehicle fail to stop at a stop sign. (*Id.*) The vehicle traveled westbound on Vine Street at a high rate of speed, disregarded the stop sign, and came to a sudden stop in the middle of the intersection. (*Id.*)

After stopping, the vehicle made a sudden left turn southbound onto 55th Street. (*Id.*) Officer Farley made a U-turn in order to initiate a traffic stop for the violation he observed. (*Id.* at 13.) As Officer Farley made his way southbound on 55th Street, he observed that the vehicle had already pulled over and was stopped next to the curb on the west side of the street before he could activate his overhead lights and siren. (*Id.* at 13-14.) Officer Farley activated his overhead

lights and immediately pulled behind the vehicle. (*Id.* at 14.) The operator of the vehicle leaned out of the driver's side window and extended his hands, exposing his palms, before he was given any instruction to do so. (*Id.*)

Officers Farley and Burgess exited their patrol car and approached the vehicle. (*Id.*) Officer Farley walked up to the driver's side of the vehicle and asked the driver for his license, registration, and proof of insurance. (*Id.*) Officer Burgess approached the passenger side of the vehicle with his flashlight. (July 29, 2021 Hr'g Tr. at 10-11, ECF No. 28.) Officer Farley asked the driver why he pulled over and where he was going. (June 14 Hr'g Tr. at 14.) The driver said that he was heading home. (*Id.*) Officer Farley noticed on the driver's license that he lived in Southwest Philadelphia. (*Id.*) Officer Farley told the driver that he could smell marijuana. (*Id.* at 15.) Officer Farley described the smell as raw, unburnt marijuana. (*Id.* at 49.) The driver told Officer Farley that he knew they were going to stop him, so he pulled over. (*Id.*)

Officer Farley asked the driver if there were any weapons in the vehicle and he responded that he had a knife in the car. (*Id.*) Officer Farley observed the driver motion to retrieve it and he ordered him to stop. (*Id.*) Officer Farley then asked the driver, identified as Defendant John Allen Kane, to step out of the vehicle and he complied. (*Id.*) Before Officer Farley frisked Defendant, he heard Officer Burgess, who had entered the passenger side of the SUV to look around the areas within the driver's reach, ask, "what's this?" while holding up an amber-colored, unlabeled pill bottle filled with white tablets. (*Id.* at 18.) Defendant answered that the pills were "Percocet" and that he had a prescription for them. (*Id.* at 19.) Officer Farley frisked Defendant for weapons. (*Id.* at 21.) Officer Farley felt a hard object in Defendant's left pant pocket. (*Id.*) Officer Farley recovered a green-tinted plastic jar that contained a green, leafy substance, which, to him, appeared to be marijuana. (*Id.*) Officer Farley continued his frisk of

Defendant and recovered a second amber-colored pill bottle from Defendant's jacket pocket that was labeled with his name and "Lisinopril." (*Id.* at 23.) Officer Farley could see through the bottle and observed a clear sandwich bag that had been tied in a knot inside the bottle. (*Id.*) Officer Farley opened the bottle, pulled out the sandwich bag, and observed a tan, chunky substance he believed to be heroin. (*Id.* at 23-24.)

At this point, Officer Farley placed Defendant in handcuffs and seated him in the back of his patrol vehicle. (*Id.* at 24.) Officer Farley and Officer Burgess searched the remainder of the vehicle. (*Id.* at 24-25). Officer Burgess recovered a digital scale and four green tinted new and unused jars from the glove box. (July 29 Hr'g Tr. at 16.) When Officer Farley opened the hatch to the spare tire well, he observed a black .22 caliber revolver resting on top of the spare tire. (June 14 Hr'g Tr. at 25.) Officer Farley tried to make the revolver safe by unloading it but could not empty it. (*Id.* at 26.) As Officer Farley asked Officer Burgess for assistance, Defendant volunteered specific instructions. (*Id.* at 27.) Defendant explained to the officers that they had to "slide the door open," spin the cylinder, and half cock the hammer. (*Id.*) Officer Farley recovered one single round of ammunition. (*Id.*)

Later at the police station, Officer Burgess called poison control to identify the 46 white round pills that he found in the center console. (July 29 Hr'g Tr. at 19.) Poison control identified the stamped pills as a Percocet equivalent, a prescription opiate containing a combination of acetaminophen and oxycodone, also known as Endocet, a Schedule II controlled substance. (*Id.*) Defendant never produced a prescription for the pills. (*Id.* at 60.) The officers did not recall finding a knife in the vehicle and one was not itemized on any property receipts. (*Id.* at 38-39.) The red Chevrolet Traverse SUV was registered to Defendant and a woman

3

believed to be Defendant's mother, who also lived at the residence in Southwest Philadelphia. (June 14 Hr'g Tr. at 32.)

Defendant filed the instant Motion to Suppress on December 14, 2020. (Def.'s Mot., ECF No. 16.) The Government filed a Response in Opposition on March 30, 2021. (Gov't's Resp., ECF No. 20.) A suppression hearing was held on June 14, 2021. (*See* Min. Entry, ECF No. 22.) The Government requested to call an additional witness at a later date, and the request was granted. The hearing resumed and concluded on July 29, 2021. (*See* Min. Entry, ECF No. 27.) Over the course of the hearings, the Government presented several documentary exhibits that were admitted into evidence. The Government also presented testimony from Officer Farley and Officer Burgess. Defendant presented several documentary exhibits that were admitted into evidence. Defendant presented testimony from David Leff, a forensic narcotics consultant. Defendant tendered Mr. Leff as an expert in the field of packaging and transfer of narcotics, as well as the detection of marijuana odor. The Government cross-examined Mr. Leff as to his qualifications and objected to the Court accepting Mr. Leff as an expert. We overruled the Government's objection and accepted Mr. Leff's testimony as an expert in the field of packaging and transfer of narcotics and detection of marijuana odor.

The testimony of Officers Farley and Burgess was credible.

## II.   CONCLUSIONS OF LAW

In his Motion to Suppress, Defendant seeks to suppress the firearm recovered from the spare tire well of his vehicle. Defendant contends that the firearm should be suppressed on the grounds that the police lacked reasonable suspicion to stop him and search him for weapons, and that police lacked probable cause to search his vehicle. The Government argues that the officers

had reasonable suspicion to stop the vehicle and investigate Defendant, as well as probable cause to arrest Defendant and conduct a warrantless search of Defendant's vehicle. We agree.

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV; *see also United States v. Ubiles*, 224 F.3d 213, 216 (3d Cir. 2000). Investigative stops or seizures can be justified under the Fourth Amendment if they are made based upon a police officers' reasonable suspicion. *See United States v. Roberson*, 90 F.3d 75, 77 (3d Cir. 1996) (citing *Terry v. Ohio*, 392 U.S. 1 (1968) (holding that an investigative stop may be justified by less than the probable cause required for an arrest). Reasonable suspicion must be based upon "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21.

A traffic stop is lawful under the Fourth Amendment where a police officer observes a violation of the state traffic regulations. *See United States v. Bonner*, 363 F.3d 213, 216 (3d Cir. 2004) ("A police officer who observes a violation of state traffic laws may lawfully stop the car committing the violation." (citation omitted)). In determining whether an officer possessed reasonable suspicion to conduct a traffic stop, a court must consider the totality of the circumstances. *United States v. Silveus*, 542 F.3d 993, 1000 (3d Cir. 2008). "The fact that the stop occurred in a 'high crime area' [is] among the relevant contextual considerations...." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (internal citations omitted). If initiation of the traffic stop is valid, the officer may "expand the scope of an inquiry beyond the reason for the stop and detain the vehicle and its occupants for further investigation," but only if the officer "develops a reasonable, articulable suspicion of criminal activity." *United States v. Givan*, 320 F.3d 452, 458 (3d Cir. 2003) (citation omitted). Where reasonable suspicion for the traffic stop

5

is lacking, however, the evidence seized during as a result of the traffic stop must be suppressed. *United States v. Johnson*, 592 F.3d 442, 447 (3d Cir. 2010).

Defendant does not dispute that he committed a traffic violation. Both officers testified that they observed Defendant fail to stop at a stop sign—a violation of Pennsylvania Motor Vehicle Code Section MVC 3323-B. (Gov't Ex. 7.) Both officers testified that it was their intention to stop the vehicle after witnessing that traffic violation. Accordingly, the officers possessed reasonable suspicion to pursue Defendant and effectuate a traffic stop.

Defendant argues, however, that the officers' suspicion to expand the scope of their initial inquiry is not justified and Officer Farley's pat-down of Defendant exceeded the boundaries of a lawful frisk.

"After a traffic stop that was justified at its inception, an officer who develops a reasonable, articulable suspicion of criminal activity may expand the scope of an inquiry." *Givan*, 320 F.3d at 458. A police officer may conduct "a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual." *Terry*, 392 U.S. at 27. Officer Farley testified that based on the odor of marijuana, Defendant's statement that he had a knife in the car, his evasive left turn southbound onto 55th Street, and Defendant's statement that he was heading home, although the left turn did not take him in that direction, he suspected criminal activity and ordered Defendant to step out of the vehicle. Both officers testified that this part of the city, the 19th District, is considered a "high crime area." Defendant submits that his actions, such as voluntarily pulling to the side of the road and placing his empty hands out of the vehicle, negate any reasonable suspicion following the traffic stop. We disagree.

6

Based on the totality of the circumstances, we are satisfied that any reasonable police officer would have conducted a pat-down at this stage of the encounter. *See Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977). We find the officers' testimony credible. Both officers testified about their extensive training and experience. The officers clearly articulated their suspicion of criminal activity. They also lawfully expanded the scope of the initial stop by ordering Defendant out of the vehicle to a frisk him and to search the area within his immediate control inside the vehicle. They did this for their safety.

Next, we find that the officers' reasonable suspicion ripened into probable cause to arrest Defendant.

An officer's reasonable suspicion may mature into probable cause to arrest based on facts learned during the investigatory stop. *See United States v. Cook*, No. 04-414, 2005 WL 1484592, at * 11 (E.D. Pa. June 22, 2005). To determine whether an officer had probable cause to arrest an individual, a court must "examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). This determination is made based on the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 230-32 (1983).

Officer Farley lawfully ordered Defendant out of the vehicle. Officer Farley intended to frisk Defendant for weapons while Officer Burgess searched the area inside the vehicle within arm's reach of the driver's seat. The testimony is clear that leading up to Officer Farley's pat-down frisk of Defendant, both officers smelled an odor or raw marijuana and were aware that a knife may be present inside the vehicle. In the Third Circuit, smelling marijuana alone, "if articulable and particularized, may establish not merely reasonable suspicion, but probable

7

cause." *United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2005). Officer Farley testified that he immediately noticed the odor of marijuana as soon as he approached the driver's side of the vehicle where Defendant was seated. In addition, prior to Officer Farley conducting his pat-down of Defendant, Officer Burgess discovered an unlabeled bottle of pills, which Defendant identified as "Percocet." Officer Farley testified that in his experience when he comes across medication stored in an unlabeled pill bottle it often turns out to be contraband. Beyond the odor of marijuana and Defendant's statement regarding the knife, Officer Farley was armed with information that Defendant may be in the unlawful possession of prescription opioids.

The Supreme Court in *Minnesota v. Dickerson*, 508 U.S. 366 (1993), stated

> If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.

*Dickerson*, 508 U.S. at 375-76. In this case, officer Farley testified that he felt what he immediately recognized to be a plastic prescription bottle in Defendant's inside jacket pocket, as well as a plastic jar in his pant pocket. Officer Farley testified that the nature of these objects was readily apparent, and that objects such as these are – in his experience – known to contain drugs, including marijuana. Accordingly, we are satisfied that Officer Farley was justified in retrieving the bottles from Defendant's person and placing him under arrest for possession of controlled substances.

Finally, because we conclude that the officers initiated a traffic stop supported by reasonable suspicion, conducted a frisk of Defendant's person and vehicle supported by probable cause, it follows that the officers' arrest of Defendant and subsequent search of the remainder of the vehicle incident to that arrest did not violate Defendant's constitutional rights under the

Fourth Amendment. *See Torrence v. Sobina*, No. 06-3526, 2006 WL 2559480, at *1 (E.D. Pa. Aug. 31, 2006) ("It is undisputed that when a police officer arrests a person, the officer may conduct a full search of the person incident to the arrest.") (citing *United States v. Robinson*, 414 U.S. 218, 224-26 (1973); *see also Arizona v. Gant*, 556 U.S. 332, 351 (2009) ("Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search *or* it is reasonable to believe the vehicle contains evidence of the offense of arrest.") (emphasis added).

For these reasons, Defendant's Motion to Suppress physical evidence, specifically the firearm and single round of ammunition recovered from the spare tire well of the vehicle, will be denied.

An appropriate Order follows.

BY THE COURT:

R. BARCLAY SURRICK, J.